PROSKAUER ROSE LLP
Sally L. Schneider
1585 Broadway
New York, New York 10036
(212) 969-3803
sschneider@proskauer.com

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PRESSROOM UNIONS' WELFARE TRUST  :
FUND, PENSION TRUST FUND and  :
LOCAL 51 EDUCATION, RELOCATION  :    08 Civ. 521 (RMB)
AND SUPPLEMENTAL UNEMPLOYMENT  :
BENEFITS FUND, by their Trustees,  :
  :
                                    Petitioners,  :    **AFFIDAVIT IN SUPPORT OF**
  :    **MOTION FOR JUDGMENT**
            - against -  :
  :
EVEREADY GRAPHICS, INC.,  :
  :
                                    Respondent.  :
------------------------------------------------------------------X

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF YORK      )

Sally L. Schneider, being duly sworn, deposes and says:

1.      I am an attorney at law admitted to practice before this Court.

2.      I am an associate in the law firm of Proskauer Rose LLP, attorneys for Petitioners,

and I am fully familiar with the facts of this case.

3.      This affidavit is made in support of Petitioners' motion for judgment against

respondent Eveready Graphics, Inc. ("Eveready"), and in support of Petitioners' application for

costs and attorneys' fees.

4.      This action was commenced by the filing of a Petition to Confirm Arbitration Awards in this Court on January 18, 2008.

5.      As set forth in the Verified Petition and Memorandum of Law in Support of the Petition, this is a proceeding to confirm awards issued in arbitration proceedings between the Petitioners, the Pressroom Unions' Welfare Trust Fund, Pension Trust Fund and Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund, and the respondent Eveready.   Jurisdiction of this Court is based on section 301 of the Labor-Management Relations Act of 1947, as amended (29 U.S.C. § 185) (the "Taft-Hartley Act"), sections 502(a)(3), 502(e) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1132(e) and 1145) ("ERISA") and section 9 of the Federal Arbitration Act, as amended (9 U.S.C. § 9).

6.      On January 24, 2008, Deborah LaPointe, a licensed process server who is over the age of 18 years and is not a party to this action, served true copies of the Notice of Petition, Verified Petition to Confirm Arbitration Awards and Memorandum of Law in Support of Petition upon respondent Eveready by personal service on Donna Christie, an agent of the Secretary of State of the State of New York authorized to accept service on behalf of Eveready, pursuant to section 306 of the Business Corporation Law of the State of New York.  At that time, Ms. LaPointe paid the statutory $40.00 fee.  Ms. LaPointe's Affidavit of Service was filed with the Court on January 28, 2008.  A copy of Ms. LaPointe's Affidavit of Service is attached hereto as Exhibit A.  Copies of the Notice of Petition to Confirm Arbitration Awards, Verified Petition and Memorandum of Law in Support are attached hereto as Exhibits B, C and D, respectively.

7.      Respondent Eveready, a New York corporation, has failed to answer, appear or otherwise defend in this action within the time period permitted by law.

2

8.    The amounts shown in the Statement of Damages attached hereto as Exhibit E remain justly due and owing and no part thereof has been paid to Petitioners. The amount of costs set forth therein consist of the following items and amounts:

| | | |
|---|---|---|
| a. | Filing fee paid to the Clerk of the Court for the Southern District of New York - | $350.00 |
| b. | Statutory fee paid to the New York Secretary of State in connection with service upon Eveready (as reflected in Exhibit A, the LaPointe Affidavit of Service) | $ 40.00 |
| | | Total: $390.00 |

9.    Upon information and belief, there is no just reason for delay of entry of a judgment against respondent Eveready.

Attorneys' Fees

10.    Proskauer Rose LLP, a large New York law firm with over 700 attorneys, has, for many years, successfully represented its clients in numerous ERISA and employment-related cases. I was admitted to this Court in 1984, and I have been prosecuting actions for the recovery of employee benefits for more than seventeen (17) years.

11.    I acted as lead counsel in this matter, with the assistance of managing clerks from the firm's Managing Attorney's Office who assisted with court filings.

12.    The firm billed the Petitioners at the rate of $525 per hour for work performed by me, as my time is typically billed at this rate. For services rendered by the managing clerks, the hourly fee was $160 per hour. Petitioners seek an award at these rates.

13.    I expended 9.50 hours of work on this case, and the managing clerks expended 1.0 hour of work on this case. Petitioners calculated the lodestar by multiplying the hourly billing rates sought by the adjusted number of hours for which Petitioners seek reimbursement. Based

on the aforementioned calculations, Petitioners are seeking attorneys' fees in the amount of $5,147.50. All of the services provided are described in the contemporaneous time records attached hereto as Exhibit F. Descriptions of the work performed are entered into Proskauer Rose LLP's computer system contemporaneously with the performance of the work and are maintained in the ordinary course of business by Proskauer Rose LLP.

14.     Each billing entry on the attached time records was reviewed on a monthly basis before being submitted to Petitioners to determine that the time charges were accurate, reasonable and necessarily incurred in the prosecution of this action. Additionally, the billing entries were again reviewed in connection with this application and all appropriate redactions have been made.

15.     No prior request has been made for the relief sought herein.

16.     As set forth in the proposed Judgment attached hereto as Exhibit G, Petitioners seeks judgment against respondent Eveready computed as follows:

a.     $2,217.16 for unpaid contributions;

b.     $664.68 for interest and liquidated damages, as set forth in the Arbitration Awards;

c.     $555.92 for costs and expenses in connection with the arbitration hearings, as set forth in the Arbitration Awards;

d.     $256.36 for interest at the rate of 1¼ % per month, as set forth in the Arbitration Awards, from the date of the Awards to the date of the Petition;

e.     $390.00 for costs, pursuant to 29 U.S.C. § 1132(g)(2)(D); and

f.     $5,147.50 for attorneys' fees as set forth above, pursuant to 29 U.S.C. § 1132(g)(2)(D).

4

WHEREFORE, Petitioners respectfully requests this Court to enter judgment in their favor against respondent Eveready in the liquidated amount of $9,231.62 for unpaid benefit contributions, interest, liquidated damages, costs and expenses, and attorneys' fees and costs.

_____
Sally L. Schneider

Sworn to before me this
28th day of February, 2008

_____
Notary Public

JOAN D. RUMM
Notary Public, State of New York
No. 01RU3400450
Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires Jan. 31, 20/0

5

**Demovsky Lawyer Service**
Premier Nationwide Document Retrieval
and Process Service Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
PRESSROOM UNIONS' WELFARE TRUST FUND, et al.,

       Plaintiff(s),

  -against-

EVEREADY GRAPHICS, INC.,

       Defendant(s).
----------------------------------------------------X

AFFIDAVIT OF SERVICE
08 Civ. 521 (RMB)

STATE OF NEW YORK  )
                  S.S.:
COUNTY OF ALBANY   )

       DEBORAH LaPOINTE, being duly sworn, deposes and says that she is over the age of eighteen years, is employed by the attorney service, D.L.S., INC., and is not a party to this action.

       That on the 24TH day of January, 2008, at approximately the time of 12:30P.M., at the office of the Secretary of State, of the State of New York in the City of Albany, New York, deponent served the NOTICE OF PETITION TO CONFIRM ARBITRATION AWARDS AND VERIFIED PETITION TO CONFIRM ARBITRATION AWARDS AND MEMORANDUM OF LAW IN SUPPORT OF PETITION AND INDIVIDUAL PRACTICES OF JUDGE BERMAN AND USDC/SDNY 3RD AMENDED INSTRUCTIONS FOR FILING AN ELECTRONIC CASE APPEAL AND GUIDELINES FOR ELECTRONIC CASE FILING AND PROCEDURES FOR ELECTRONIC CASE FILING upon EVEREADY GRAPHICS, INC., the defendant in this action, by delivering to and leaving with DONNA CHRISTIE an agent of the Secretary of State, of the State of New York, two (2) true copies thereof and at that time of making such service deponent paid said Secretary of State a fee of forty dollars. That said service was made pursuant to Section, 306, Business Corporation Law.

       Deponent further says that she knew the person so served as aforesaid to be the individual in the Office of the Secretary of State of New York, duly authorized to accept such service on behalf of said defendant.

D.L.S., Inc.
100 State St.
Ste 220
Albany, NY 12207
800-443-1058
www.dlsny.com



## Demovsky Lawyer Service
Premier Nationwide Document Retrieval
and Process Service Company

DONNA CHRISTIE is a white female, approximately 45 years of age, stands approximately 5 feet 4 inches tall, weighs approximately 135 pounds with blonde hair and blue eyes.

DEBORAH LaPOINTE

Sworn to before me this
24TH day of January, 2008

NOTARY PUBLIC

Frank J. Panucci
Notary Public-State of NY
Qualified in Albany Co.
No. 4721156
Comm. Expires July 31, 2010

D.L.S., Inc.
100 State St.
Ste 220
Albany, NY 12207
800-443-1058
www.disny.com

PROSKAUER ROSE LLP
Sally L. Schneider
1585 Broadway
New York, New York  10036
(212) 969-3803

Attorneys for Petitioners

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
PRESSROOM UNIONS' WELFARE TRUST          :
FUND, PENSION TRUST FUND and             :
LOCAL 51 EDUCATION, RELOCATION           :    08 Civ. 521 (RMB)
AND SUPPLEMENTAL UNEMPLOYMENT            :
BENEFITS FUND, by their Trustees,        :
                                         :    **NOTICE OF PETITION TO**
                          Petitioners,   :    **CONFIRM ARBITRATION**
                                         :    **AWARDS**
          - against -                    :
                                         :
EVEREADY GRAPHICS, INC.,                 :
                                         :
                          Respondent.    :
-------------------------------------------------------------------X

　　　　　**PLEASE TAKE NOTICE** that a Verified Petition to Confirm the Arbitration

Awards issued on January 30, 2007, February 26, 2007, March 29, 2007 and May 30, 2007, in

the arbitration proceedings between the Pressroom Unions' Welfare Trust Fund, Pension Trust

Fund and Local 51 Education, Relocation and Supplemental Unemployment Benefits and

Eveready Graphics, Inc., is being filed in the United States District Court for the Southern

District of New York on or before January 22, 2008, for an Order, pursuant to 29 U.S.C. § 185,

29 U.S.C. § 1132, 29 U.S.C. § 1145, and 9 U.S.C. § 9, confirming the Arbitration Awards and

directing that judgment be entered in favor of the Pressroom Unions' Welfare Trust Fund,

Pension Trust Fund and Local 51 Education, Relocation and Supplemental Unemployment

Benefits and against Eveready Graphics, Inc. in the sum of $3,694.12, plus attorneys' fees and

costs, and for such other and further relief as the Court deems just and proper.

     A copy of the Verified Petition and Memorandum of Law in Support of the

Petition is attached hereto.

Dated: New York, New York
      January 17, 2008

              PROSKAUER ROSE LLP
              Attorneys for Petitioners

              By:  /s/  Sally L. Schneider
                Sally L. Schneider
              1585 Broadway
              New York, New York 10036
              (212) 969-3803

              sschneider@proskauer.com

TO:    Eveready Graphics, Inc.
       2526A Butler Place
       Bronx, New York  10461

PROSKAUER ROSE LLP
Sally L. Schneider
1585 Broadway
New York, New York  10036
(212) 969-3803

Attorneys for Petitioners

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

PRESSROOM UNIONS' WELFARE TRUST    :
FUND, PENSION TRUST FUND and    :
LOCAL 51 EDUCATION, RELOCATION    :   08 Civ. 521 (RMB)
AND SUPPLEMENTAL UNEMPLOYMENT    :
BENEFITS FUND, by their Trustees,    :
   :
                   Petitioners,    :   **VERIFIED PETITION TO**
   :   **CONFIRM ARBITRATION**
   :   **AWARDS**
      - against -    :
   :
EVEREADY GRAPHICS, INC.,    :
   :
                   Respondent.    :

------------------------------------------------------------------X

       Petitioners, the Pressroom Unions' Welfare Trust Fund, Pension Trust Fund and

Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund (the

"Funds"), by and through their attorneys, Proskauer Rose LLP, respectfully allege as follows:

       1.      This is a proceeding brought by the Trustees of the Funds to confirm awards

issued in arbitration proceedings between petitioners Funds and respondent Eveready Graphics,

Inc. ("Eveready").  Jurisdiction of this Court is based on section 301 of the Labor-Management

Relations Act of 1947, as amended (29 U.S.C. § 185) (the "Taft-Hartley Act"), section 9 of the

Federal Arbitration Act, as amended (9 U.S.C. § 9), and sections 502(a)(3), 502(e) and 515 of

the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1132(e)

and 1145) ("ERISA").

2.      Petitioners Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with section 302(c)(5) the Taft-Hartley Act (29 U.S.C. § 186(c)(5)). The Funds are employee benefit plans within the meaning of sections 3(1), 3(3) and 502(d)(1) of ERISA (29 U.S.C. §§ 1002(1), (3) and 1132(d)(1)), and multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145). The purpose of the Funds is to provide various health, welfare, pension, education, relocation and supplemental unemployment benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the printing industry and the Graphic Communications Union Local 51-23M G.C.I.U.-A.F.L.-C.I.O. (the "Union"). The Funds maintain their offices and are administered at 31 West 15th Street, New York, New York 10011.

3.      The Trustees of the Funds are fiduciaries within the meaning of sections 3(21) and 502 of ERISA (29 U.S.C. §§ 1002(21) and 1132), and bring this proceeding in their fiduciary capacity.

4.      Respondent Eveready is a for-profit domestic corporation doing business in the State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185). Respondent Eveready maintains its offices at 2526A Butler Place, Bronx, New York 10461.

5.      Respondent Eveready contractually agreed with the Union to be bound by the terms of a collective bargaining agreement with the Union (the "CBA") (annexed hereto as Exhibit A) and the Funds' trust agreements.

2

6.      Pursuant to the CBA and the trust agreements, respondent Eveready agreed to pay monthly contributions to the Funds for all of its covered employees.

7.      Respondent Eveready failed to pay its required monthly contributions to the Funds for its covered employees for the months of November 2006 through February 2007.

8.      As a result of respondent Eveready's aforesaid failure to make payment, the Funds served respondent Eveready with demands for arbitration for each such failure.

9.      As indicated on the attached arbitration awards (the "Awards") (annexed hereto as Exhibit B), the following arbitration hearings were held:

- January 30, 2007 for contributions owed for the month of November 2006;

- February 26, 2007 for contributions owed for the month of December 2006;

- March 29, 2007 for contributions owed for the month of January 2007; and

- May 30, 2007 for contributions owed for the month of February 2007.

10.     The Funds were present at each hearing.  Respondent Eveready failed to appear. The amount of respondent Eveready's delinquencies, as submitted by the Funds, was uncontested by respondent.

11.     After having provided the parties with full and ample opportunity to appear and to present evidence with arguments in support of their respective positions, the Arbitrator issued the attached Awards.

12.     The Funds sent each of the Awards to respondent Eveready.

13.     As of the date of this Petition, none of the delinquent contributions contractually due to the Funds and no part of the Awards in favor of the Funds have been paid by respondent Eveready.

14.     Respondent Eveready's failure to make payment constitutes a violation of the CBA and section 515 of ERISA (29 U.S.C. § 1145).

3

15.    As a result of respondent Eveready's failure to comply with its contractual and statutory obligations, petitioners Funds have been required to employ counsel to enforce the Awards.

16.    This Petition is brought within one year after the issuance and delivery of the Awards, none of which has been vacated or modified on any ground.

WHEREFORE, petitioners Funds respectfully request that an order be entered confirming the Awards in all respects, and directing that judgment be entered against respondent Eveready for:

      (a)    $2,217.16 for unpaid contributions;

      (b)    $664.68 for fifteen percent (15%) interest and fifteen percent (15%) liquidated damages on the unpaid contributions, as set forth in the Awards;

      (c)    $555.92 for reasonable costs and expenses in connection with the arbitration hearings, as set forth in the Awards;

      (d)    $256.36 for interest at the rate of one and one-quarter percent (1¼ %) per month on the unpaid contributions from the date of the Awards, as set forth in the Awards;

      (e)    the reasonable attorneys' fees and costs incurred by the Funds in connection with this Petition, pursuant to § 502(g)(2) of ERISA; and

      (f)    for such other and further relief as the Court deems just and proper.

Dated: New York, New York
      January 14, 2008

                    PROSKAUER ROSE LLP
                    Attorneys for Petitioners

                    By: _Sally L. Schneider_
                        Sally L. Schneider
                    1585 Broadway
                    New York, New York 10036
                    (212) 969-3803

                    sschneider@proskauer.com

## VERIFICATION

RONALD A WASSERMAN
No. 01WA6108788
Notary Public, State of New York
Qualified in Onondaga County
My Commission expires April 19, 2008

STATE OF NEW YORK          )
                           )
COUNTY OF NEW YORK    )

Anthony Sclafani, being duly sworn, deposes and says:

He is the Administrator of the Pressroom Unions' Welfare Trust Fund,

Pension Trust Fund and Local 51 Education, Relocation and Supplemental

Unemployment Benefits Fund, on whose behalf the instant action is brought; he has

read the foregoing Verified Petition and knows the contents thereof; and that the

contents thereof are true to his knowledge except as to matters therein stated to be

alleged on information and belief and that, as to those matters, he believes them to be

true.

Anthony Sclafani

Sworn to before me this
___ day of January, 2008

Notary Public

Shop Rules and Wage Scales

CONTRACT

between

# EVEREADY GRAPHICS, INC.

1554 St. Peters Avenue

Bronx, NY    10461

and

# GRAPHIC COMMUNICATIONS UNION

# LOCAL 51-23M

# G.C.I.U. - A.F.L. - C.I.O. - C.L.C.

31 West 15th Street

New York, NY    10011

2004-2007

TABLE OF CONTENTS

PART I - IDENTIFICATION.................................................................. 1

    Dues Checkoff ...................................................................... 2

PART II - DURATION...................................................................... 2

PART III - SETTLEMENT OF DISPUTES................................................... 2

PART IV - VACATIONS.................................................................... 4

PART V - WORKING CONDITIONS......................................................... 5

    Hours of Work ...................................................................... 5

        34 ½ Hour Schedule .............................................................. 5

        35 ¾ Hour Schedule .............................................................. 6

    Lunch Time ......................................................................... 7

    Holidays ........................................................................... 7

    Jury Duty .......................................................................... 8

    Death Leave ........................................................................ 9

    Paid Sick Leave .................................................................... 9

    Personal Leave Day ................................................................ 10

    Overtime ........................................................................... 10

    Early Call ......................................................................... 11

    Ten Hour Rule ...................................................................... 11

    Subs and Extras .................................................................... 11

    Payment of Wages ................................................................... 11

    Maternity Leave .................................................................... 12

    Quitting Work, Lay-Offs and Discharges .......................................... 12

    Seniority Rights - Right of Recall ............................................... 13

    Sanitary Conditions ................................................................ 14

PART VI - WELFARE TRUST FUND......................................................... 15

PART VII - PENSION FUND............................................................... 15

PART VIII - E., R & S.U.B FUND........................................................ 15

PART IX - INCOME SECURITY ANNUITY FUND.............................................. 15

PART X - VACATION DEPOSITORY FUND.................................................... 16

PART XI - TRUST FUNDS RESPONSIBILITY................................................. 16

PART XII - SALE OR OTHER TRANSFER OF CONTROL OF BUSINESS.......................... 16

PART XIII - PRESSROOM FOREMAN........................................................ 17

PART XIV - CHARACTER OF WORK......................................................... 18

PART XV - COMPLEMENT OF MEN.......................................................... 18

PART XVI - STRUCK WORK................................................................ 20

PART XVII - EXECUTION................................................................. 21

PART XVIII- ARBITRATION AGREEMENT.................................................... 22

ADDENDUM................................................................................ 24

    Wage Increases ..................................................................... 24

SCALE AGREEMENT

Shop Rules and Wage Scales Contract
for Book and Job Offices

between

Eveready Graphics, Inc.

and
Graphic Communications Union
Local No. 51-23M
G.C.I.U.-A.F.L.-C.I.O.-C.L.C.

# PART I - IDENTIFICATION

1.    This wage scale and shop rules Contract made between Eveready Graphics, Inc., hereinafter called the "Employer" and Graphic Communications Union Local 51-23M, G.C.I.U.-A.F.L. C.I.O.-C.L.C., hereinafter called the "Union", shall govern the employer which recognizes by signature this Contract with the Union.

2.    The Employer recognizes the Union as the exclusive representative for collective bargaining for all employees in the pressrooms of the Employer, engaged as printing pressmen as listed in the wage scales contained in this Contract. It further recognizes and agrees that all prior practices performed by employees covered by this Contract shall continue as heretofore.

3.    The following provisions shall govern the employer who recognizes by signature Graphic Communications Union Local 51-23M as the representatives of employees of his lithographic department in the operation of offset presses and/or related lithographic work such as camera, platemaking and stripping, and all other preparatory work, or any other work relating to Printing which is now recognized to be under the Union's jurisdiction.

4.    It is mutually agreed that an employee engaged to work in a job classification set forth in this Contract shall be employees in accordance with the provisions of this Contract and shall be paid the wages specified for such classification. The only exception hereunder shall be an apprentice or on-the-job trainee. Any employee not a member of the Union at the time of employment must make application for membership in the Union after thirty (30) days from date of hiring. Any employee accepted into membership in the Union shall, as a condition of continued employment during the term of this Contract, pay or offer to pay the regular monthly dues of the Union. In the event that the Employer indicates his intent to hire additional employees covered under this Contract, the Employer must first call the hiring hall, he shall designate the position to be filled and will state how long he expects the position to last.

5.    The parties to this collective bargaining agreement agree to continue their policy of no discrimination against any employee because of race, creed, color, age, sex, national origin, handicap, marital status, sexual orientation or affectional preference with respect to wages, hours, advancement, selection for apprenticeship openings or other conditions of employment. Any use if the masculine gender in the collective bargaining agreement shall be understood to include the feminine gender as well.

1

6.    It is understood and agreed, that if any provision of the previous Contract, excluded from this Contract solely because of the restrictions of the law is determined either by a legislative enactment or by a decision of the court of highest recourse to be legal or permissible, then the parties shall immediately enter into discussions with a view to the restoration of such clause.

### Dues Checkoff

7.    Subject to the existing requirement of law for written authorization from the respective employees, the Employer shall deduct weekly from the earnings of the employees covered by this agreement, the Union dues (which includes initiation fees and standard Union assessments) of such employees and forthwith remit same to the Union by the tenth (10th) day of the month following the month in which they were deducted. Monies so deducted shall be deemed trust funds in the hands of the Employer.

## PART II - DURATION

8.    All terms as set forth in this Contract shall be effective on March 3, 2004 and shall continue until March 2, 2007.

9.    For the renewal of this Contract, the Union shall present to the Employer and the Employer shall present to the Union, ninety (90) days prior to the expiration of this Contract, a statement in writing of proposals for changes both in shop rules and scale of wages. All proposals shall be included in the first statement, subject to change in negotiations. Negotiations shall be entered into promptly following the interchange of proposals, and efforts made by each party with the other to conciliate points of difference.

## PART III - SETTLEMENT OF DISPUTES

10.    The following rules shall govern all employees employed the Employer who is a party to this Contract, and employment is given and accepted under these conditions:

11.    No precedents or previous conditions, rules or agreements shall be recognized in any way or affect or modify these rules which are to be interpreted or changed only in accordance with the provisions of this Contract or through arbitration under the Arbitration Agreement between the Employer and the Union.

12.    All employees are cautioned against any infraction of rules contained herein, as such will be the cause of discipline either by immediate dismissal or by complaint through the Employer to the Union.

13.    All complaints emanating from any party to this Contract shall receive prompt acknowledgement and attention, and every effort shall be made to reach a prompt and satisfactory adjustment.

14.    In the event of a difference arising between the Employer and the Union, all work shall continue without interruption pending proceedings looking to conciliation or arbitration, either local or international, and the scale of wages and hours provided in contract between the parties and working conditions prevailing prior to the time the difference arose shall be preserved unchanged until a final decision of the matter at issue shall have been reached.

2

15.  When a complaint is made, it shall be immediately transmitted to the organization to which the party complained of belongs. Such complaints to be adjusted within a period not exceeding thirty (30) days.

16.  The Chapel Chairman shall be the recognized official representative of the Union.

17.  The Foreman shall be the recognized official representative of his employer in dealing with the Chapel Chairman.

18.  Questions arising over the jurisdiction of the Union shall be determined in the same manner as any other disputes.

19.  The Union's accredited representative may enter the pressroom at any time of the day or night. He shall, upon entry, report his presence to the business office. In the event the principal of the plant or his designated office representative is unavailable, or in the event the business office is closed, the man in charge of the pressroom shall be considered the official representative of the Employer.

20.  The Union's accredited representative shall be free to investigate complaints of violations, shall have the right to examine all working cards but shall not collect any dues or assessments and shall conduct his investigations in such manner as not to interfere with production. The Chapel Chairman shall be permitted to consult his Union regarding any alleged infraction of the Contract which, in order to preserve harmony, demands immediate adjustment. In the case of any complaint made either by the Employer or the Union, the Employer and the Union reserve the right to jointly investigate the conditions. In case the Business Representative-Treasurer or the President of the Union requests a copy of any pressroom payroll for the purpose of making correct returns of the earnings of members of the Union, he must be furnished same; provided the Union will pay the legitimate expense of making up such a payroll.

21.  The Union agrees that it will not instigate, call, authorize or ratify any strike, stoppage, slowdown, walkout, boycott or any other form of concerted interference with production against the Employer.

In the event that any employee or employees covered by this agreement shall engage in any conduct described in the foregoing paragraph the Union, immediately upon receipt of written notice thereof from the Employer, shall fully:

(i)     Inform the person or persons involved or participating whether actively or passively, in such conduct that the Union disapproves of such conduct and direct such person or persons to discontinue that conduct and to refrain from further conduct of the same or similar nature and to immediately return to work. Such direction shall be both oral an written, the latter being delivered to each such person at his or her place of work and at his or her residence;

(ii)    Post appropriate notices to the foregoing effect at Union headquarters and at the place or places of business affected;

(iii) Refuse to recognize or honor any picket line established by such individuals;

3

(iv)        Advise the Employer in writing as to the steps taken by the Union pursuant to the foregoing and provide the Employer with a copy of the written directions and notice referred to in paragraphs (i) and (ii) above;

           and

(v)         Continue its foregoing efforts so long as may be necessary to bring such conduct to an end.

In the event the Union satisfies the foregoing requirements, there shall be no liability of the part of the Union by reason of such strike, stoppage, slowdown, walkout, boycott or other form of concerted interference with production. Notwithstanding any other provisions to this Contract, the failure or refusal of any employee to pass through or work behind any picket line authorized by the Graphic Communications International Union at any plant covered by this Contract, the company shall not discharge, discipline or otherwise discriminate against such employee. Furthermore, Local 51-23M shall not be held at fault for any such action taken on behalf of any lawful strike under the jurisdiction of the G.C.I.U.

# PART IV - VACATIONS

22.    An employee covered by this Contract shall receive vacation credits per shift worked, less Withholding and Social Security taxes, based on the regular straight time base contract rate for the press and the shift upon which he is regularly employed in accordance with the vacation credit schedule shown in this book. In the case of an employee who is employed on more than one (1) press in any fiscal week, his vacation credits for that week shall be based upon the press on which he worked the majority of time during said week.

23.    In the event an employee receives over-the-scale compensation, he shall be paid per shift vacation credits in addition to the above in proportion to the amount of his over-scale compensation.

24.    The number of days to be granted as a vacation to the employee shall be determined by dividing the total amount of vacation credits earned during the vacation year beginning April 1st and ending March 31st of each year, by the rate per shift paid to the employee at the time of his vacation, but under no circumstances shall the vacation period exceed twenty (20) full working days, subject to Section 23. Fractional parts of a day earned as a vacation shall be disregarded and only whole days shall be considered in granting vacations to the employees, provided, however, that this provision shall not offset the amount of vacation allowance to which each employee shall be entitled in accordance with the provisions of this paragraph.

       Notwithstanding any other provision of this Contract, the entitlement of apprentices and trainees to vacation time and pay shall not exceed the following:

       One (1) year of service in the shop - two (2) weeks.

       Two (2) years of service in the shop - three (3) weeks.

       Three (3) years of service in the shop - four (4) weeks.

4

25.  Vacation credits shall be paid to all employees who qualify and receive holiday pay, when no work is required.

26.  Employees shall receive vacation credits for each shift worked including 6th and 7th day employment and credits for paid holidays. Vacation credits computed on the formula of 220 vacation credits to establish four (4) weeks vacation pay. Vacation credits shall be directed on a monthly basis to the Vacation Depository Fund.

27.  Four (4) weeks of the vacation is mandatory and cannot be cumulative from year to year. The period during which two (2) weeks of vacation shall be taken must begin May 1st and end November 30th, and all such vacations must start and end within this period, and the days of such vacation must be consecutive. The third and fourth weeks of vacation may be taken in periods of two (2) consecutive weeks, or one (1) week increments at any time during the year, but in all cases, the days must be consecutive and single days are not permitted. In addition to the options for vacation described above, employees may take vacations one (1) week at a time, by mutual agreement. No employee can be obligated to take four (4) single weeks. The time frame as described above remains as is.

28.  When a holiday falls during an employee's vacation, the employee must be scheduled to be off on the day before or the day after his vacation.

29.  Employees absent who receive Compensation under the terms of either the Workmen's Compensation Act or the State Disability Law or the New York Pressroom Unions-Printers League Welfare Trust Fund shall receive such days including the waiting period as credit toward the number of days worked that they are required to be eligible for vacation credits under the terms of this Section for 90 days in each contract year.

30.  The foreman of each shop shall designate the time when the employee shall go on vacation which shall be so arranged as not to interfere with the efficient operation of the office. However, where the nature of the work permits, employees shall have preference to the choice of vacation time so designated in the order of their seniority in that shop.

31.  The foreman of each office shall post, not later than March 15th of each year, the vacation schedule of employees covered by this Contract.

32.  When employees are on scheduled vacations, they are not eligible for employment in any other pressroom.

# PART V - WORKING CONDITIONS

## Hours of Work

### 34 ½ Hour Schedule

33A.  DAY SHIFT: Monday through Thursday: Seven consecutive hours (exclusive of time for lunch) shall constitute a day shift, the hours to be between 7:30 AM and 5:30 PM.

34A.  Friday: Six and one-half consecutive hours (exclusive of time for lunch), the starting time and lunch period to be the same as Monday through Thursday,

5

shall constitute the Friday day shift. Provided, when an employee is not scheduled to work on a Friday because of a paid holiday, the six and one half hour provisions of the Friday shift shall be applied to the Thursday shift.

35A. NIGHT SHIFT: Monday through Thursday: Seven consecutive hours (exclusive of time for lunch) shall constitute a night shift, the hours to begin not later than 8:00 PM, and on the eve of a holiday, not later than 6:00 PM.

36A. Friday: Six and one-half consecutive hours (exclusive of time for lunch), the starting time and lunch period to be the same as Monday through Thursday shall constitute a Friday night shift. Provided, when an employee is not scheduled to work on a Friday because of a paid holiday, the six and one half hour provisions of the Friday shift shall be applied to the Thursday shift.

37A. THIRD (LOBSTER) SHIFT: 31 ¼ hours of 6 ¼ consecutive hours for five (5) consecutive nights, Monday through Friday inclusive.


## 35 ¾ Hour Schedule

33B. DAY SHIFT: Monday through Thursday: Seven and one- quarter consecutive hours (exclusive of time for lunch) shall constitute a day shift, the hours to be between 7:30 AM and 5:30 PM.

34B. Friday: Six and three-quarters consecutive hours (exclusive of time for lunch), the starting time and lunch period to be the same as Monday through Thursday, shall constitute the Friday day shift. Provided, when an employee is not scheduled to work on a Friday because of a paid holiday, the six and three-quarters hour provisions of the Friday shift shall be applied to the Thursday shift.

35B. NIGHT SHIFT: Monday through Thursday: Seven and one- quarter consecutive hours (exclusive of time for lunch) shall constitute a night shift, the hours to begin not later than 8:00 PM, and on the eve of a holiday, not later than 6:00 PM.

36B. Friday: Six and three-quarters consecutive hours (exclusive of time for lunch), the starting time and lunch period to be the same as Monday through Thursday shall constitute a Friday night shift. Provided, when an employee is not scheduled to work on a Friday because of a paid holiday, the six and three-quarters hour provisions of the Friday shift shall be applied to the Thursday shift.

37B. THIRD (LOBSTER) SHIFT: 33 ¾ hours of 6 ¾ consecutive hours for five (5) consecutive nights, Monday through Friday inclusive.

38. There may be separate starting times of up to one (1) hour either before or after the starting time of the regular day, night or lobster shifts for the pressroom and/or preparatory departments as long as it is within the framework of the hours of the Contract for the respective shifts.

39. When a plant operates 24 hours a day for a continuous period of time of one (1) week or more, every effort must be employed to establish a third shift.

40. When time is called, employees must be at their appointed stations, ready to work, and shall remain there and at ready to work, and shall remain there

6

and at work until the calling of time at the end of that period. Time shall be called by the method employed in each individual shop.

41. Any employee who is found guilty of falsifying time cards or records, or ringing up someone else's time card, or causing someone to ring up his time card, shall be immediately discharged and shall forfeit his right to the time falsified. The facts of the matter concerning such employee shall be reported in writing to the Union.

42. There shall be no eating, chapel meetings or gatherings of employees during the hours of labor.

## Lunch Time

43. Lunch time may be arranged by mutual consent, but the foreman cannot keep an employee more than four and one-half hours before allowing a reasonable time for lunch, except in cases of emergency. Any regular employee compelled to work during lunch time must take the regular time off for lunch when the other employees return to work.

44. Price and one-half shall be paid for work during lunch on each occasion worked.

45. A reasonable time for lunch shall be allowed, but shall be not less than one-half (1/2) hour or more than forty-five (45) minutes, unless otherwise mutually agreed. Such lunch time shall be as near the middle of the working period as practicable.

46. Whenever an employee is required or permitted to work overtime before and/or beyond regular shift hours two (2) hours, one-half hour shall be allowed to obtain lunch; thereafter he shall be entitled to another lunch period of one-half hour for every four (4) hours of actual overtime worked. Lunch time shall be paid for at overtime rates of the period within which it occurs, provided, that when an employee is required to work overtime for less than two (2) hours, the above provision shall not apply.

46A. The parties to this agreement recognize that the over- time lunch hour is based on accumulation of overtime before and/or after shift worked.

## Holidays

47. LEGAL HOLIDAYS: The following are the recognized holidays, and no new holidays shall be observed except by mutual consent of the Union and the Employer: New Year's Day, Lincoln's Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Election Day, Thanksgiving Day, the Friday after Thanksgiving and Christmas Day. Lincoln's Birthday shall be recognized as a floating holiday and can be celebrated on either February 12 or any other day throughout the contract year on a shop basis where it is mutually agreed by the Employer and the majority of the employees covered by this Contract. If celebrated on a day other than February 12, the date selected must be chosen thirty (30) days prior and such day posted in the shop.

48. The Employer hereby agrees to pay to regular employees, both journeymen and apprentices, a day's pay at straight time rates when no work is required for all recognized holidays listed above (or days celebrated as such).

7

49.   To qualify for holiday pay, an employee must work or stand ready to work, the four (4) regular working days of the calendar week in which the holiday occurs, unless ill or excused by management, except where a new employee starts work on the first day of the week in which a holiday occurs and is previously notified that the duration of his employment shall be less than four (4) days in that week.

50.   It is agreed that an employee laid off during the calendar week of the holiday stands ready to work and qualifies for holiday pay. However, an employee employed in a shop three (3) months or longer, temporarily or permanently laid off within ten (10) calendar days preceding the holiday shall qualify for holiday pay. No employee can qualify for or receive pay for a contract recognized holiday from more than one (1) employer and no employee out ill or laid off can qualify for more than one (1) contract recognized holiday during a given illness or layoff.

51.   When a holiday falls on a Saturday, it shall be celebrated on the Friday preceding the Saturday holiday. In the event the employee is required to work on the holiday, he shall receive Saturday rates for such work in addition to the shift's pay specified for such holiday. If required to work overtime, the Saturday rates for such work shall prevail.

52.   An employee called in to work on a contract recognized holiday shall receive time and one-half for the first half of the shift and double time for the second half of the shift in addition to the shift's pay specified for such holiday when no work is performed. Any time worked before or after the regular hours of the shift on a contract recognized holiday shall be paid for a triple time. An employee called in to work on Saturday night when it is the night of the holiday shall be paid for the Saturday night shift as provided in Section 67 in addition to the shift's pay specified for such holiday when no work is performed.

53.   For the night shift, the holiday shall be the night of the holiday and for the third shift (lobster), the holiday shall be the morning following the holiday.

54.   It is agreed that where two contract recognized holidays fall in the same calendar week, the limitation of one contract recognized holiday during a given illness or layoff shall not apply.

## Jury Duty

55.   Regular journeymen employees and apprentices required to be absent from employment to serve on a jury or day of qualification shall be paid regular wages minus any pay received as jury-man for a maximum of fifteen (15) days during the life of the Contract, in addition to day of qualification. Such absence shall be supported by a statement signed by the clerk of the court certifying as to each day of jury duty. To be eligible for such payment, the employee must inform his foreman in writing of the call to qualify or to jury service within twenty-four (24) hours, exclusive of Saturdays and Sundays.

When an employee has received notice of Jury Duty or Day of Qualification and has notified the Employer and is subsequently laid off, that employer is required to pay the Jury Duty benefit as provided in this Section.

8

56. Travel allowances received belong to the employee and shall not be deducted from net pay due employees for jury service.

57. It is agreed that where an employee serving on jury duty is required to serve on a day which is a contract recognized holiday, the employee shall be given another day off, mutually agreed upon, when he returns to work.

### Death Leave

58. In the event of death in the immediate family of a regular journeyman employee or apprentice, such regular employee shall be granted three (3) days leave without loss of pay provided such three (3) days fall within the regular employee's regularly scheduled work week. For the purpose of this paragraph, "immediate family" shall include spouse, parent, children, brother, sister, grandparents, father-in law, mother-in-law, daughter-in-law, son-in-law, or any legal dependent as defined by the Internal Revenue Code and Regulations.

59. It is mutually agreed that for purposes of determining eligibility for Jury Duty pay and Death Leave as provided in Section 54 and 56 above, regular employees are defined as follows:

(a) An employee who is currently employed in the plant at the time of the claim and who has worked in that plant for a minimum of five (5) consecutive working days prior to such claim and not for less than thirty (30) regular working days during the preceding three (3) month period; or

(b) An employee who is currently employed in the plant at the time of the claim and has been steadily employed by that plant during the past year but whose five (5) days of consecutive employment at the time of the claim has been interrupted by reason of illness or temporary layoff.

### Paid Sick Leave

60. Effective April 1st in each year of the Contract, an employee employed in an office covered by this Contract who worked 110 days in one (1) contract year shall receive in the following year, five (5) days of paid sick leave.

61. Unused sick leave shall be paid for in cash each April 1st of the Contract. Unused sick leave paid in cash on April 1st of the contract year shall not require the payment of vacation credits.

62. An employee whose employment is terminated for any reason shall receive in addition to sick leave earned in the previous contract year, one (1) day's paid sick leave for each twenty-two (22) days worked in the contract year in which his employment is terminated.

63. In crediting the number of days worked toward the first day of sick leave benefit, the full twenty-two (22) days must be worked. For those who earn more than one (1) but less than five (5) days' sick leave benefit, the major fraction of twenty-two (22) days shall result in an additional full day's sick leave benefit. In making the count of days required by this Section, credit shall be given for days paid (but not worked) pursuant to this agreement as holidays, jury duty, paid sick leave and bereavement leave.

64. No employee employed in a firm covered by this Contract shall be eligible to earn more than five (5) days sick leave in each contract year. The Employer

9

shall not be required to give credit toward sick leave to employees who have acquired full credit in a contract year in any other firm or combination of firms having book and job contracts with Graphic Communications Union Local No. 51-23M.

65.    Time off for which an employee receives paid sick leave or compensation under the rules of either the Workman's Compensation Act or State Disability Laws shall be included in the schedule of days worked for which vacation credits are paid and for which E.R. & S.U.B., Welfare and Pension Funds contributions are made. Employees shall receive such days including the waiting period as credit toward the number of days worked that are required to be eligible for sick days under the terms of this Section for ninety (90) days of each contract year.

## Personal Leave Day

66.    Effective with the contract year beginning March 3, 1987, any employee who has worked for the Employer for twenty-two (22) days in the previous contract year or has accrued twenty-two (22) days in the previous contract year shall be entitled to one (1) day of paid personal leave. Such personal leave must be taken during the contract year in which it is due, and may not be accumulated. If the employee is laid off prior to taking the day, the shift shall be paid in cash. If not taken during the contract year, such personal day will be forfeited.

Notice of personal leave must be given by the employee taking such leave to the Employer by noon of the day preceding the day on which the leave is to be taken. Personal leave may not be taken in a week in which a contractual holiday falls.

## Overtime

67.    Overtime: Price and one-half for the first four hours of actual work after which double price for any additional overtime worked. Less than one-half hour at overtime rates shall not be worked or paid for when overtime is worked.

68.    When a Saturday day shift is worked, employees shall receive time and one-half for the first half of the shift and double time for the second half of the shift; if required to work before or after the regular shift hours, they shall be paid at the rate of double price.

69. When a Saturday night shift is worked, employees shall receive time and one-half for the first half of the shift and double time for the second half of the shift; all time worked before or after the regular hours of the shift shall be paid for at double price, provided, however, that where it is shown to the Joint Conference Committee that it is necessary to operate a Saturday night shift to the mutual advantage of parties to this Contract, the said Committee is authorized to determine the conditions under which Saturday night shift shall be operated.

70.    Sundays shall be charged at double time rates; any portion of the shift of such day shall be considered a day's work. Any time worked before or after the regular hours of the shift of such day shall be paid for at triple price.

71.    There is a recognition of a responsibility that in order to service customer requirements, reasonable amounts of overtime must be worked. However,

10

there is no intent to work excessive overtime on equipment or in classifications in firms where employees are laid off so as to deny such employees work opportunities in that shop.

## Early Call

72. Employees called to work one and one-half hours or less before the regular starting time of their shift shall be paid price and one-half up to the regular starting time of their shift; if called to work more than one and one-half hours before starting time of their shift, double price shall be paid for all time worked up to the regular starting time of their shift.

## Ten Hour Rule

73. Ten hours must intervene between time of quitting and starting work. An employee reporting at the end of the ten hour period immediately following the usual day's work shall be paid at the rate of single time. An employee ordered to report to work at the regular starting time of the shift, before the expiration of the ten hour period shall be paid at the overtime rate prevailing at the time at which his previous day's work ended until the ten hour period has expired. An employee working the major portion of any shift that he starts with must be paid for the full day.

## Subs and Extras

74. When an employee is hired, he shall report for work within a reasonable time, not to exceed one (1) hour; or if hiring occurs on the day before, he shall report at the regular for beginning work, or forfeit any time lost there after.

75. Employees shall receive a full day's of full night's pay when called in to work on extra jobs, unless they are employed for one (1) full day or one (1) full night immediately following the day of their engagement, in which case they shall only be paid for the actual time worked. This shall not apply to employees discharged for incompetency after trial, in which case they shall be paid or actual time worked.

76. A substitute put on for an employee who has quit or failed to keep his engagement to work shall be paid by the Employer only from the time he actually began work and at the regular rate. Any excess shall be paid by the derelict employee.

## Payment of Wages

77. Payment of wages shall be made weekly in cash not later than seventy-two (72) hours after the close of the fiscal week, excepting where Saturday, Sunday or holidays intervene, and not more than seven working days shall elapse between pay days. Payment by check is permitted provided it is done in conformity with the New York State law. When a legal holiday falls on pay day, payment of wages shall be made on the day preceding the holiday.

78. Each and every employee must refuse to perform any work whatsoever in an office which has not paid wages in full for previous week's work as herein stipulated; said prohibition to remain on said office until all employees have

11

been so paid. No further action by the Union shall be necessary when wages have not been so paid.

## Maternity Leave

79.    Upon submission of appropriate medical certification, maternity leave up to six (6) months without loss of seniority shall be granted to present employees who have six (6) months or more of service.

## Quitting Work, Lay-Offs and Discharges

80.    Any employee who is a member of the Union who quits his position or fails to keep an engagement to work without reasonable notice or excuse to the one in charge, or without putting on a competent substitute, shall be subject to discipline by the Union by fine or otherwise.

81.    An employee who quits or who refuses to comply with the instructions of the foreman or the one in charge, which shall be deemed equivalent to quitting, after beginning a day's work, shall be entitled to no compensation for any part of that day. Sickness shall be the only accepted excuse for an employee quitting short of his time.

82.    Employees ordered by foreman to report for work shall, upon so reporting, become entitled to a shift's pay, except in case of fire, flood or accident over which the Employer has no control and same occurs before employees start to work. This does not relieve the Employer from responsibility of shift's pay if he had sufficient time to notify employees of same and failed to do so.

83.    The Employer shall be reimbursed by the employee through the Union at the regular rate of wages for all time lost the first day or night through an employee quitting or failing to keep an engagement to work if the Employer makes a reasonable effort to secure a substitute.

84.    In cases where employees are laid off before the regular pay day, they shall be entitled to, and shall immediately receive, whatever sum may be due them, provided men so laid off on any other than the day shift shall receive their pay on demand the next working day and if not paid before 12:00 noon, every hour lost thereafter in waiting must be paid for at the rate received while working.

85.    Employees ordered by foremen to report for work shall, upon so reporting, become entitled to a day's or night's pay. (This Section is subject to Sections under the Title "Subs and Extras.)

86.    No employee shall be paid for less than a full day unless he be discharged for incompetency or for disobedience of rules. If employed for more than one (1) full day, he shall be paid only for the time actually worked the first day, provided this rule shall no apply in case of tardiness of regular employees or time taken off at employee's own volition. (This Section is subject to Sections under the Title "Subs and Extras and Section 85.)

87.    An employee cannot quit, or be laid off or discharged, without reasonable notice, and the Chairman must be notified. Forty-eight (48) hours before the close of the last working day shall be considered reasonable notice for layoff of regular employees except in case of fire, flood or un avoidable cause; there shall be no layoff by telephone or telegram. Temporary employees and

12

substitutes hired for jobs of limited duration only shall not be laid off without reasonable notice. Notice of layoff not later than the start of the regularly scheduled lunch period on the day or night of layoff, as the case may be, shall be considered reasonable notice for such temporary employees.

88.    For purposes of this Section, an employee shall be considered a temporary employee and/or substitute if, upon hire, he is told: (1) that he is being hired specifically to take another employee's place who is out ill or out for any reason on other than a permanent basis, or (2) that he os being hired specifically for a given job which has come into the shop and this employment will terminate when that work is completed. Also, any employee who has not worked in a plant for a minimum of five (5) consecutive days prior to the layoff and for not more than twenty (20) regular working days during the three (3) months preceding the layoff, shall be considered a temporary employee.

89.    Any employee quitting his position must notify the foreman forty-eight (48) hours prior to the close of his last working shift that he will be quitting his position, or forfeit the pay of two shifts if he fails to give such notice. This penalty shall not apply, however, where an employee quitting his position because of recall to another shop advises the office directly upon being notified of such recall.

90.    In the event of discharge or layoff of an employee, if he considers that he has been discriminated against, upon demand the foreman shall give the reason for the discharge in writing.

91.    When the foreman finds it necessary to reduce the force, employees may be rotated or laid off as the nature of the work requires. The Chapel Chairman shall not be discriminated against in the rotation of the force.

### Seniority Rights - Right of Recall

92.    Employees with three (3) months or more length of service in a shop shall have seniority rights and the right of recall in that office as set forth below:

93.    When the foreman finds it necessary to decrease the force other than by rotation and such layoff affects employees with three (3) months or more length of service in a shop, such decrease will be accomplished by the laying off first of the person or persons last employed as the nature of the work may require.

94.    When the Employer has layoffs, the employees working shall not work Saturday, Sunday or holiday overtime, unless the laid off employees are given the first opportunity to work on these overtime days. Should the employee refuse to work these overtime days, the employees working shall work the overtime days as per past practice. When calling in laid off employees to work, the nature of the work will be considered.

95.    Employees in a shop for more than three (3) months who have demonstrated their competence in that shop to perform other than the job classification for which they were hired shall have preference to such other work over employees with lesser length of service in that shop.

96.    However, an employee claiming other work to avoid layoff to reduce the force shall be physically qualified and capable of performing all journeyman

13

skills including makeready, register, etc. required on such work, and shall not be exempt from discharge if unqualified or incompetent.

97.   The parties recognize that a factor essential to productivity is the flexibility in the assignment of pressroom personnel. It is not the intent to limit this flexibility. However, the parties recognize that an employee's seniority within the plant - consistent with production needs and the level of competency required -shall be considered in the assignment of a shift as the opportunity for changes arise in the future.

98.   The obligations of recall by a shop shall cease where it notifies the Union of its intent to fill a position of a laid off employee entitled to recall.

99.   An employee's seniority rights and right of recall shall cease one-hundred and forty-five (145) working days after date of layoff.

100. The Union shall be notified no later than thirty-six (36) hours preceding the day an employee is to report on recall. The Union shall notify the shop promptly whether or not an employee is returning, but in any case, not later than noon of the shift preceding the day the employee is to report. Nothing in the above shall interfere with the Employer's right to fill the job temporarily in the meantime.

101.  Such employee shall lose all seniority right and rights of recall in that shop if he does not make himself available on recall unless sick or hospitalized. The Employer may require evidence of illness. This shall no apply unless recall is for a period of five (5) or more consecutive days.

102.  Any person who is brought over to be trained in another segment or other equipment shall not lose seniority rights on that equipment or job on which they have demonstrated their competency in that plant. However, their seniority rights in the new position shall not commence until they have been used by the shop in the new position for a period of 6 months, at which time the Employer shall designate whether they are competent in the new position. An employee's seniority rights in the new position. An employee's seniority rights in the new position shall be determined by only the number of years used in the new position by that shop. However, their time in the new position shall be added to their original hiring time as a basis for their original seniority.

103.  Nothing in the above shall interfere with the right of the Employer to transfer employees freely from one class to another without regard to length of service.
104. No employee can hold seniority status in more than one (1) shop.

105.  Members holding Union office shall retain their seniority in the plant in which they last worked and their tenure in office shall be added to their seniority. If at such time a member holding Union office returns to the plant in which they hold seniority, they must demonstrate competence on the equipment in that plant.

## Sanitary Conditions

106.  The Employer shall furnish at all times a healthful, sufficiently ventilated, properly heated and well-lighted space for the performance of all work and all sanitary conditions shall be in accordance with the laws of the

14

State of New York and the New York City Health Codes. Employers covered by this Contract shall also maintain, as a minimum, locker facilities for hanging clothes during working hours.

## PART VI - WELFARE TRUST FUND

107.  The Employer and the Union have executed a separate agreement to provide welfare for journeymen and apprentice employees covered by this Contract. This agreement provides that the Employer shall contribute to a Fund to be known as the New York Pressroom Unions Welfare Trust Fund.

108.  In addition to the wages as set forth in the Wage Scales Section of the Contract, the Employer shall contribute weekly a percentage of gross earnings, from day of hire as set forth below.

109. Effective March 2001, the rate of contribution to the Fund shall be twelve percent (12%) of gross earnings from date of hire.

110. In the event that the Welfare Trust Fund shall be unable to maintain the benefits provided by said Fund at the rate of contribution contained herein, then the Union shall have the option to direct additional monies from the current scale. In addition to the aforementioned, the Employer shall be obligated to provide, without any cost to the employee, the statutory New York State Disability Benefits.

## PART VII - PENSION FUND

111.  The Employer and the Union have executed a separate agreement to provide pensions for journeymen and apprentice employees covered by this Contract. This agreement provides that the Employer shall contribute to a Fund to be known as the Pressroom Unions Pension Fund. In addition to the wages as set forth, each Employer shall contribute weekly the sum of eight percent (8%) of gross earnings of each journeyman and apprentice covered by this Contract, from day of hire.

## PART VIII - E., R & S.U.B FUND

112.  The Employer and the Union have executed a separate agreement to provide benefits through Graphic Communications Union Local No. 51 Education, Relocation and Supplemental Unemployment Benefit Fund (E.R. & S.U.B.). Employer contributions shall be at the rate of two percent (2%) of gross earnings for all employees covered by this Contract from day of hire.

113.  However, an additional amount of up to ¼ of 1% may be required to fund improved disability benefits if such recommendation is made to the parties to the Contract by the Trustees of the E.R. & S.U.B. Funds.

## PART IX - INCOME SECURITY ANNUITY FUND

114.  The Employer and the Union have executed a separate agreement to provide benefit through the Pressroom Unions Income Security Annuity Fund for all employees covered by this Contract.

115. Employer contributions to the Income Security Annuity Fund shall be fifteen dollars ($15.00) per shift, five shifts per week maximum, from day of hire.

# PART X - VACATION DEPOSITORY FUND

116. The Employer and the Union have executed a separate agreement to provide for a Vacation Depository Fund for all employees covered by this Contract.

117. Each Employer shall contribute, to the Pressmen's Local 51 Vacation Fund, an amount for each employee determined under the formula set forth in Section 26 & 27 hereof, from day of hire.

# PART XI - TRUST FUNDS RESPONSIBILITY

118. Payments to the Trust Funds hereinabove mentioned shall be accepted from all Employers having substantially similar collective bargaining agreements with the Union and, to the extent that the Trust Agreement may so provide, from the Union for its officers and employees, and the Fund for its Administrator and office employees, provided that such payments shall be made on the same basis as herein set forth.

119. Any contributing Employer who fails to make contributions to the Fund as required shall be liable for expenses of collection (at 25% of amount owed the Fund) incurred by the Trustees, and for interest at the rate of 15% on the amount owed the Fund and for reasonable attorneys fees incurred in recovering these funds.

120. All contributing Employers agree to be bound by the terms of the respective agreements of the funds set forth in this agreement.

121. In the event that an Employer shall fail to make timely payments to any of the funds listed within this Contract, then not withstanding any other provisions of this Contract, the Union shall have the right to direct employees covered by this Contract to cease work for such defaulting Employer which shall not be deemed a breach of this agreement.

# PART XII - SALE OR OTHER TRANSFER OF CONTROL OF BUSINESS

122. In the event an Employer signatory to, or otherwise bound by this Agreement, contemplates, intends or is forced to relinquish control of its operations covered by this Agreement, or any part of such operations, whether by means of a transfer of stock, a sale of assets, a lease, a merger, a consolidation, a relocation, a voluntary proceeding or reorganization in bankruptcy or by any other means, it shall, no later than sixty (60) days prior to the effective date, or contemplated effective date of any such transaction, given written notice by certified mail (1) to the Union or Unions signatory to this Agreement, and (2) if a member of the League, to the League, and (3) to the Trustees of any Pension, Welfare or other employee benefit fund to which contributions are required by other provisions of this Agreement. Such written notice shall also be given promptly upon the filing of an involuntary proceeding in bankruptcy.

16

(a)    The written notice required by the paragraph above shall state in detail the precise nature of the transaction, the identity and address of any purchaser, lessee, transferee, or other entity or entities party to such transaction, the contemplated or actual effect of such transaction upon the employees covered by this Agreement, the actual or contemplated effective date, and such other or different details as will enable the parties, including the Union or Unions, effectively to negotiate with such Employer with respect to any such transaction.

(b)    Upon request, any such Employer shall enter into good faith negotiations with the Union or Unions with respect to all aspects of any such transaction and shall furnish such pertinent information as many be requested.

(c)    In the event any such Employer fails to adhere to the requirements of the preceding paragraph, it shall be liable, in a proceeding in arbitration (pursuant to Article XX of this Agreement) or in a judicial proceeding, to pay to each covered employee adversely affected by any such transaction six (6) months pay, computed at such employee's regular rate of pay, as liquidated damages, together with such cost and attorneys fees as may have been incurred in establishing such liability. Nothing contained herein shall be construed as a limitation upon the authority of an arbitrator or a court toward such further damages as may be found to be appropriate.

(d)    Nothing contained in this Part XII shall be deemed or construed to limit or diminish in any way the right of the Union or Unions to enforce this Agreement against any purchaser, lessee or other transferee pursuant to applicable law concerning successorship or otherwise, or to limit in any way the rights of the Union or Unions or any covered employee to instituted proceeding pursuant to state or federal labor relations laws or any other statute rule or regulation which may be applicable.

## PART XIII - PRESSROOM FOREMAN

123. Where there is more than one (1) pressman employed there shall be a foreman and he shall be the only person to whom application shall be made for a situation. He shall be the only person for employing and discharging employees.

124. No foreman shall run a press where there are more than seven cylinders running.

125. There shall be a working foreman employed in all departments of offset and rotogravure preparatory work, where there are seven or more journeymen employed.

126. In book and job and magazine pressrooms no foreman shall take charge of a pressroom having more than twenty (20) presses, either cylinder or rotary, without an assistant foreman on the floor. Where pressrooms are divided or on separate floors, they shall be considered as separate pressroom, except where the total number of cylinder and rotary presses. Any number of presses over forty (40) to be regulated according to the spirit of this Section.

127. When counting for forepersons 2/c-4/c sheetfed shall be counted as 2 cylinders; 2/c and straight 4/c webs shall count as 2 cylinders each ; 5 or 6 color sheetfed or webs with 5 or 6 plate cylinders shall count as 3 cylinders each ; 7 or 8 colors sheetfed and webs with 7 or 8 plate cylinders shall count

17

as 4 cylinders, when counting for forepersons. All presses with more than 8 units or plate cylinders shall count as 5 in the complement.

128. All orders for the pressroom shall emanate from the foreman, who shall be considered the representative of the Employer. Any complaint over orders issued or action taken by the foreman, in pursuance of his duties as foreman, shall be disposed off in the same manner as any other disputes arising under these rules. The foreman may be a member of the Union.

129. Foremen who are not now members of the Union shall be given the opportunity to join the Union, but their employment status shall not be affected by their decision. Foremen created subsequent to the effective date of this Contract, if not already members of the Union, shall be subject to the provisions of Section 3 of the Contract which requires employees to make application for membership in the Union after thirty (30) days from the date of hiring.

130. Any foreman who operates presses either before or after his regular shift hours or on Saturday, shall be paid overtime for such mechanical work. However, no foreman shall displace any employee regular engaged in the operation of such presses, except in cases of emergency where such regular employee is not available. Nothing in this Section shall prevent foreman coming in for supervisory purposes at any time.

131. Where there are more than fourteen (14) job presses in operation, the foreman shall not operate a press. All types of automatic machines shall count as two in the complement of presses. 132. For fifteen or more job presses an assistant foreman is required. 133. Where cylinder and job pressrooms are separate departments and more than one (1) job pressman is employed, one shall act as working foreman. This shall not apply where there is a general pressroom foreman in charge. The foreman of the pressroom must be a journeyman pressman.

## PART XIV - CHARACTER OF WORK

134. An employee may be assigned to any position other than the position for which he was engaged, with the provision that if such other position carries with it a higher scale than the scale he has been receiving, he shall receive, while filling that position, the scale provided for the same. In no case shall an employee be paid for such temporary work at a scale lower than he has been receiving at his regular position.

135. An assistant or an apprentice shall do whatever is essential in the judgment of the foreman or the pressman that will assist in the preparation and operation of the press to which he is assigned.

## PART XV - COMPLEMENT OF MEN

136. The complement of men required when a press is running shall be employed while the press is being made ready. They shall be subject to the direction of the foreman to do any work required of them, provided such work shall not displace a regular employee. In the event of any press working overtime the man employed on said press shall be given preference to the overtime, except in cases of emergency.

18

137. A pressman may not run more than two single cylinder presses, one perfecting press, one two color press, one sheet fed rotary, one cylinder over 68 inches. He shall not run more than one automatic cylinder press up to and including 23 inches on halftone or color work without an assistant nor shall he run more than one automatic cylinder press over 23 inches up to and including 42 inches without an assistant. No pressman shall run two presses on separate floors.

138. Job pressmen on platen presses shall not operate more than four hand-fed platens or two automatic platens.

139. Two platens in combination rated as one automatic platen or one automatic cylinder.

140. Job cylinder pressman shall not operate more than two automatic cylinder presses.

141. On combination jobs, not covered by this Contract, the scale of the highest rated press shall apply.

142. Special machines not covered by this Contract shall be settled by mutual consent.

143. In the interest of training qualified offset journeymen, a pressman may be utilized to replace an assistant in the complement of any offset.

144. It is understood that the purpose of this provision is to enable a company whose offset operations are being expanded through the addition of new offset presses or the increase in number of shifts to train journeymen pressman in its employ on offset press work by temporarily replacing the assistant pressman in the complement for such presses.

145. The pressman who is selected by the Employer for such in plant offset training shall have been in the Employer's employ one (1) year or longer and the period the training program is being conducted shall not be laid off nor may he cause the layoff of any other press assistant in the plant by being assigned to other productive work. Unless it is otherwise mutually agreed the training period under this provision shall not exceed three (3) months in any given instance.

146. In instances when less than all units of a two or more unit press are in operation, the complement shall be that for the number of units operating except that no number of the press crew of such press may be laid off as a result of operating the press with the reduced complement or cause the layoff of any other pressroom employee by being shifted to other productive work.

147. It is further recognized and agreed that all prior practices in regard to manning and operation of business forms presses covered by this Contract shall continue as heretofore.

148. Complement of Men on Web and Rotogravure Presses; A first pressman on all book and magazine web presses. Second pressman require on double-roll book and magazine web presses of any size when two rolls are running or on single-roll book and magazine web presses having one or more of the following attachments when in operation; stitching, pasting, covering or inserting; and on single-roll book and magazine web presses 60 inches or over, having one or more color attachments in operation. Second man required where the details of the work

19

make it necessary. Brakeman pressmen required on all size book and magazine web presses. Tension pressmen required on all offset rolls while in operation. Operator required for one or two automatic feeders, more operators required where the details of the work make it necessary. On newer type book and magazine web presses not now operating in New York City it is agreed that the complement of men will be settled by mutual agreement as provided in Section 142, taking into account current competitive operation of such presses. On web presses, other than book and magazine, complement of men to be settled by mutual agreement as provided in Section 142.

149. New Processes/New Machinery;  In the event of the introduction of new processes or new machinery the complement of men required or other conditions shall be settled by mutual agreement before operation, later to be finally determine after a trial period mutually agreed upon. Such question shall be settled by reference to the standing Joint Conference Committee of the League and the Union.

150.  In the event that a firm determines to introduce new equipment or process which is new to the shop, the Employer must give consideration to the training of current employees to operate such new equipment or process.

151.  Web Offset Press Online Complement:  The online complement on web offset presses shall be as follows:

WEB WIDTHS

|  | 18" up to and including 30" | 31" up to and including 38 ½" | 39" up to and including 55" |
|---|---|---|---|
| 1-Unit 2 Plate Cyl. | 1 pressman<br>1 assistant | 1 pressman<br>1 assistant<br>1 tender | 1 pressman<br>1 assistant |
| 2-Unit 4 Plate Cyl. | 1 pressman<br>1 assistant | 1 Pressman<br>1 assistant<br>1 tender | 1 pressman<br>2 assistants |
| 3-Unit 6 Plate Cyl. | 1st & 2nd pressman<br>1 assistant | 1st & 2nd pressman<br>1 assistant | 1st & 2nd pressmen<br>1 assistant<br>1 tender |
| 4-Unit 8 Plate Cyl. | 1st & 2nd pressmen<br>1 assistant | 1st & 2nd pressmen<br>1 assistant<br>1 tender | 1st & 2nd pressmen<br>2 assistants |
| 5-Unit 10 Plate Cyl. | | 1st & 2nd pressmen<br>1 assistant<br>1 tender | 1st & 2nd pressmen<br>1 job pressman<br>1 assistant<br>1 tender |
| 6-Unit 12 Plate Cyl. | | | 1st 2nd &3rd pressmen<br>1 assistant<br>1 tender |

# PART XVI - STRUCK WORK

152.  No Employer shall require employees covered by this agreement to execute any work received from or destined for another Employer whose employees are locked out or on a strike authorized by the Graphic Communications International Union or under circumstances which make an Employer an ally of

such Employer, and such work shall not be within the scope of the employment of
employees covered by this agreement. However, nothing in the foregoing shall
interfere with an Employer from continuing normal account work or interfere
with his right to secure such work as may be had from a customer on a direct
account basis.

GRAPHIC COMMUNICATIONS
INTERNATIONAL UNION

GRAPHIC COMMUNICATIONS UNION
LOCAL NO. 51-23M
G.C.I.U.-A.F.L.-C.I.O.-C.L.C

/s/    By JOSEPH GURRIERI
       President, Local 51-23M

/s/    By IRA COHEN
       Business Representative-Treasurer, Local 51-23M

EVEREADY GRAPHICS, INC.

/s/ By

/s/ By


# PART XVII - EXECUTION

EVEREADY GRAPHICS, INC.


and

GRAPHIC COMMUNICATIONS UNION
LOCAL NO. 51-23M
G.C.I.U.-A.F.L.-C.I.O.-C.L.C.

JOSEPH GURRIERI *President*

IRA COHEN *Business Representative-Treasurer*

21

# PART XVIII- ARBITRATION AGREEMENT

between

EVEREADY GRAPHICS, INC.

and

GRAPHIC COMMUNICATIONS UNION
LOCAL NO. 51-23M
G.C.I.U.-A.F.L.-C.I.O.-C.L.C.

Agreement made this 3rd day of March, 2004 between EVEREADY GRAPHICS, INC. (hereinafter called the "Employer") and GRAPHIC COMMUNICATIONS UNION, LOCAL 51-23M (hereinafter called the "Union").

WHEREAS, the parties hereto have simultaneous herewith entered into a collective bargaining agreement covering the period from March 3, 2004-March 2,2007 which agreement is referred to as "Shop Rules and Wage Scales Contract" and

WHEREAS, the parties hereto are desirous of providing a method for the fair and peaceful adjustment of all disputes which may arise under the aforesaid Shop Rules and Wage Scales Contract;

NOW THEREFORE, in consideration of the mutual promises contained and other good and valuable consideration, the parties hereto hereby agree as follows:

1.    All disputes, controversies, claims, complaints and grievances arising under, out of, or in relation to the aforesaid Shop Rules and Wage Scales Contract, if not adjusted as therein provided, including, without limitation, any claim or dispute concerning the alleged violation of any of the provisions of said Contract, and all disputes, controversies, claims, complaints and grievances arising under, out of or in relation to this Agreement, shall be settled in accordance with the procedures hereinafter set forth, which shall be the exclusive means for the settlement thereof.

2.    The settlement procedures referred to above shall be as follows:

(a)    The matter in dispute shall first be submitted to a representative of the Employer and a representative of the Union. The parties will designate their respective representatives for this purpose.

(b)    If the matter at issue is not adjusted under (a) above, within ten (10) full business days after it is first submitted to the representatives of the Employer and the Union, then it shall, at the request of either party, be brought before an arbitrator to be named in this Section.

(c)    In the event that the parties shall, by mutual agreement, extend the time within which the Employer and the Union must decide the issue, then the time within which arbitration may be requested shall be correspondingly extended.

(d)    When request is made for submission of a matter to arbitration, it shall be submitted to Walter Eisenberg, Roger Maher or Herbert Marx.

In the event that all of the said arbitrators shall resign, refuse to act or be incapable of acting, then, in any of those events, an arbitrator shall be designated by mutual agreement of the Employer and the Union. If they are not able to do so within ten (10) full business days after request by either party upon the other for designation of an arbitrator, then the arbitrator shall be selected or designated in accordance with the rules of the American Arbitration Association.

(e) The award of any arbitrator selected or designated as above provided shall be final and binding. In addition to granting such relief as he may deem proper, the award of the arbitrator may also contain provisions directing or restraining acts and conduct of the parties.

(f) The fee, if any, of an arbitrator shall be borne equally by the parties.

(g) The arbitrator shall render a decision within thirty (30) days after the close of the hearing in accordance with American Arbitration Association rules.

(h) There shall be no undue delays in arbitration unless mutually agreed by the Employer and the Union.

3.    This Agreement shall go into effect as of March 3, 2001 to March 2, 2004. However, it is understood and agreed that notwithstanding the expiration of this Agreement, the provisions herein provided shall remain in effect with respect to all disputes, controversies, claims, complaints and grievances which shall have arisen, prior to such expiration under the Shop Rules and Wage Scales Contract or under this Agreement.

IN WITNESS WHEREOF, the parties hereto by their authorized representatives have hereunto set their hands and seals the day and year first above written.

EVEREADY GRAPHICS, INC.

GRAPHIC COMMUNICATIONS UNION
LOCAL 51-23M

/s/ by

/s/ by JOSEPH GURRIERI
   *President*

/s/ by

/s/ by IRA COHEN
   *Business Rep. - Treasurer*

23

## ADDENDUM

### *Wage Increases*

Effective March 3, 2004, all employees covered by this agreement shall not receive an increase in wages.

Effective March 3, 2005, all employees covered by this agreement shall receive a three percent (3%) increase in wages.

Effective March 3, 2006, all employees covered by this agreement shall receive a three percent (3%) increase in wages.

24

## OFFICE OF THE IMPARTIAL ARBITRATOR

<table>
<tr>
<td>

**In the Matter of the Arbitration**

**Between**

**Pressroom Unions'
Welfare Trust Fund**

**And**

**Eveready Graphics, Inc.**

</td>
<td>

**AWARD**

**Hearing Date:**        **January 30, 2007**

**Hearing Closed:**      **January 30, 2007**

</td>
</tr>
</table>

## BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Welfare Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

## AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )    1.    The Employer is directed to provide forthwith to the Pressroom Unions' Welfare Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 11/06.

( X )    2.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund contributions due under the Agreement, in the amount of: $302.34 for the period(s) 11/06

          (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the Contract, viz. $ 90.70.*

          (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 75.59.

(   )    3.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $                    for the period(s):

          (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the contract, viz. $                    .

          (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:        $
.

( X )    4.    Inasmuch as certain of the arrears due to the Pressroom Unions' Welfare Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions'Welfare Trust Fund.

( X )    5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Welfare Trust Fund.

          *To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York**  ⎫
                       ⎬ ss:
**County of New York** ⎭

**Roger Maher**
**Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____                    _____

Date                                        Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| | |
|---|---|
| **In the Matter of the Arbitration**<br><br>**Between**<br><br>**Pressroom Unions'**<br>**Pension Trust Fund**<br><br>**And**<br><br>**Eveready Graphics, Inc.** | **AWARD**<br><br>**Hearing Date:**    **January 30, 2007**<br><br>**Hearing Closed:**    **January 30, 2007** |

## BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Pension Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

## AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )   1.    The Employer is directed to provide forthwith to the Pressroom Unions' Pension Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 11/06.

( X )   2.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund contributions due under the Agreement, in the amount of: $ 201.56 for the period(s) 11/06

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the Contract, viz. $ 60.47.*

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 50.39.

(  )    3.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $                        for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the contract, viz. $                .

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:        $
.

( X )   4.    Inasmuch as certain of the arrears due to the Pressroom Unions' Pension Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Pension Trust Fund.

( X )   5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Pension Trust Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

| | |
|---|---|
| State of New York<br>County of New York | ss: |

Roger Maher
Impartial Arbitrator

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____        _____
Date                                    Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| |
|---|
| **In the Matter of the Arbitration**<br><br>**Between**<br><br>**Local 51 Education, Relocation and Supplemental unemployment Benefits Fund**<br><br>**And**<br>**EVEREADY GRAPHICS** |

**AWARD**

**Hearing Date:01/30/07**

**Hearing Closed:01/30/07**

## BACKGROUND

The matter(s) here at issue between the above-named parties involved the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

## AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )    1.    The Employer is directed to provide forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund here involved the regular monthly payroll reports required by the Agreement for the period (s): 11/06                    .

( X )    2.    (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due under the Agreement, in the amount of: $ 50.39                    for the period (s): 11/06

            (b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the Contract, viz. $ 15.00                    .*

            (c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 13.00                    .

( )    3.    (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due as a result of the audit conducted by the Fund, in the amount of $                    for the period(s):

            (b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the contract, viz. $                    .

            (c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $                    .

( X )    4.    Inasmuch as certain of the arrears due to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

( X )    5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

        *To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York**          }
                                            } ss:
**County of New York**        }

**Roger Maher**
**Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

January 30, 2007

_____
Date

_____
Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

<table>
<tr><td>
In the Matter of the Arbitration

Between

**Pressroom Unions'
Welfare Trust Fund**

And

**Eveready Graphics, Inc.**
</td>
<td>

**AWARD**

**Hearing Date:**       **February 26, 2007**

**Hearing Closed:**    **February 26, 2007**
</td></tr>
</table>

### BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Welfare Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

### AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )   1.   The Employer is directed to provide forthwith to the Pressroom Unions' Welfare Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 12/06.

( X )   2.   (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund contributions due under the Agreement, in the amount of: $ 302.34 for the period(s) 12/06

          (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the Contract, viz. $ 90.70.*

          (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $75.59 .

(   )   3.   (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $                    for the period(s):

          (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the contract, viz. $                    .

          (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:          $

.

( X )   4.   Inasmuch as certain of the arrears due to the Pressroom Unions' Welfare Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Welfare Trust Fund.

( X )   5.   The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Welfare Trust Fund.

        *To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York**  ⎫
                      ⎬ ss:                                   **Roger Maher**
**County of New York** ⎭                                      **Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____                    _____
Date                                        Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| | |
|---|---|
| **In the Matter of the Arbitration**<br><br>**Between**<br><br>**Pressroom Unions'**<br>**Pension Trust Fund**<br><br>**And**<br><br>**Eveready Graphics, Inc.** | **AWARD**<br><br>**Hearing Date:**    **February 26, 2007**<br><br>**Hearing Closed:**    **February 26, 2007** |

### BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Pension Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

### AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )    1.    The Employer is directed to provide forthwith to the Pressroom Unions' Pension Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 12/06.

( X )    2.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund contributions due under the Agreement, in the amount of: $ 201.56 for the period(s) 12/06

        (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the Contract, viz. $ 60.47 .*

        (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $50.39.

( )    3.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $            for the period(s):

        (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the contract, viz. $       .

        (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:       $ .

( X )    4.    Inasmuch as certain of the arrears due to the Pressroom Unions' Pension Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Pension Trust Fund.

( X )    5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Pension Trust Fund.

        *To date and continuing at the rate of 1 ¼% per month until paid.

State of New York   ⎫<br>              ⎬ ss:<br>County of New York ⎭

                        **Roger Maher**<br>                        **Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____            _____

Date                                 Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| In the Matter of the Arbitration<br><br>**Between**<br><br>**Local 51 Education, Relocation and Supplemental unemployment Benefits Fund**<br><br>**And**<br>**EVEREADY GRAPHICS** | **AWARD**<br><br>**Hearing Date:02/26/07**<br><br>**Hearing Closed:02/26/07** |
| --- | --- |

## BACKGROUND

The matter(s) here at issue between the above-named parties involved the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

## AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )   1.   The Employer is directed to provide forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund here involved the regular monthly payroll reports required by the Agreement for the period (s): 12/06                                                            .

( X )   2.   (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due under the Agreement, in the amount of: $ 50.39           for the period (s): 12/06

(b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the Contract, viz. $ 15.00                       .*

(c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 13.00

(  )   3.   (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due as a result of the audit conducted by the Fund, in the amount of $                       for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the contract, viz. $                       .

(c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $

( X )   4.   Inasmuch as certain of the arrears due to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

( X )   5.   The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

State of New York  ⎤
                          ⎬ ss:
County of New York ⎦

**Roger Maher**
**Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

February 26, 2007

_____
Date

_____
Roger Maher

# OFFICE OF THE IMPARTIAL ARBITRATOR

<table>
<tr><td>

**In the Matter of the Arbitration**

**Between**

**Pressroom Unions'
Welfare Trust Fund**

**And**

**Eveready Graphics, Inc.**

</td><td>

**AWARD**

**Hearing Date:**      **March 29, 2007**

**Hearing Closed:**   **March 29, 2007**

</td></tr>
</table>

## BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Welfare Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

## AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )  1.    The Employer is directed to provide forthwith to the Pressroom Unions' Welfare Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 01/07 .

( X )  2.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund contributions due under the Agreement, in the amount of: $ 302.34 for the period(s) 01/07

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the Contract, viz. $ 90.70.*

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 75.59.

(  )  3.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $                    for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the contract, viz. $            .

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:         $

( X )  4.    Inasmuch as certain of the arrears due to the Pressroom Unions' Welfare Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Welfare Trust Fund.

( X )  5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Welfare Trust Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York**        } ss:        **Roger Maher**
**County of New York**                    **Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____          _____
Date                          Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

<table>
<tr><td>

**In the Matter of the Arbitration**

**Between**

**Pressroom Unions'
Pension Trust Fund**

**And**

**Eveready Graphics, Inc.**

</td><td>

**AWARD**

**Hearing Date:**      **March 29, 2007**

**Hearing Closed:**      **March 29, 2007**

</td></tr>
</table>

### BACKGROUND

    The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Pension Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

    The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

### AWARD

    The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )   1.   The Employer is directed to provide forthwith to the Pressroom Unions' Pension Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 01/07.

( X )   2.   (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund contributions due under the Agreement, in the amount of: $ 201.56 for the period(s) 01/07

      (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the Contract, viz. $ 60.47 .*

      (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:$ 50.39 .

(  )   3.   (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $          for the period(s):

      (b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the contract, viz. $      .

      (c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:     $ .

( X )   4.   Inasmuch as certain of the arrears due to the Pressroom Unions' Pension Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Pension Trust Fund.

( X )   5.   The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Pension Trust Fund.

    *To date and continuing at the rate of 1 ¼% per month until paid.

| | |
|---|---|
| **State of New York** | **Roger Maher** |
|       } ss: | **Impartial Arbitrator** |
| **County of New York** | |

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____            _____
Date                                      Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| | |
|---|---|
| **In the Matter of the Arbitration**<br><br>**Between**<br><br>**Local 51 Education, Relocation and Supplemental unemployment Benefits Fund**<br><br>**And**<br>**EVEREADY GRAPHICS** | **AWARD**<br><br><br>**Hearing Date:03/29/07**<br><br>**Hearing Closed:03/29/07** |

## BACKGROUND

The matter(s) here at issue between the above-named parties involved the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

## AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )    1.    The Employer is directed to provide forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund here involved the regular monthly payroll reports required by the Agreement for the period (s): 01/07

( X )    2.    (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due under the Agreement, in the amount of: $ 50.39    for the period (s): 01/07

(b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the Contract, viz. $ 15.00    .*

(c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 13.00

( )    3.    (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due as a result of the audit conducted by the Fund, in the amount of $    for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the contract, viz. $

(c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $

( X )    4.    Inasmuch as certain of the arrears due to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

( X )    5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York** ⎫<br>            ⎬ **: ss:**<br>**County of New York** ⎭

                                  **Roger Maher**<br>                                  **Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

March 29, 2007

_____     _____
Date     Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| | |
|---|---|
| **In the Matter of the Arbitration**<br><br>**Between**<br><br>**Pressroom Unions'**<br>**Welfare Trust Fund**<br><br>**And**<br><br>**Eveready Graphics, Inc.** | **AWARD**<br><br>**Hearing Date:**    **May 30, 2007**<br><br>**Hearing Closed:**    **May 30, 2007** |

### BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Welfare Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

### AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )    1.    The Employer is directed to provide forthwith to the Pressroom Unions' Welfare Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 02/07.

( X )    2.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund contributions due under the Agreement, in the amount of:  $ 302.34 for the period(s) 02/07

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the Contract, viz.  $ 90.70.*

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $75.59.

(  )    3.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $                    for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Welfare Trust Fund under the applicable provisions of the contract, viz.  $

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Welfare Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:          $

( X )    4.    Inasmuch as certain of the arrears due to the Pressroom Unions' Welfare Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Welfare Trust Fund.

( X )    5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Welfare Trust Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

State of New York   ⎫<br>                ⎬ ss:<br>County of New York ⎭

**Roger Maher**
**Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____

Date

_____

Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| |
|---|
| **In the Matter of the Arbitration**<br><br>**Between**<br><br>**Pressroom Unions'**<br>**Pension Trust Fund**<br><br>**And**<br><br>**Eveready Graphics, Inc.** |

**AWARD**

**Hearing Date:**     **May 30, 2007**

**Hearing Closed:**     **May 30, 2007**

### BACKGROUND

The matter(s) here at issue between the above-named parties involved the Pressroom Unions' Pension Trust Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

### AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )   1.    The Employer is directed to provide forthwith to the Pressroom Unions' Pension Trust Fund here involved the regular monthly payroll reports required by the Agreement for the period(s): 02/07.

( X )   2.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust Fund contributions due under the Agreement, in the amount of: $ 201.56 for the period(s) 02/07

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the Contract, viz. $ 60.47.*

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $50.39 .

(   )   3.    (a) The Employer owes and is directed to pay forthwith to the Pressroom Unions' Pension Trust  Fund, contributions due as a result of the audit conducted by the Fund, in the amount of $                              for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Pressroom Unions' Pension Trust Fund under the applicable provisions of the contract, viz. $                              .

(c) The Employer is also directed to pay forthwith to the Pressroom Unions' Pension Trust Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount:         $ .

( X )   4.    Inasmuch as certain of the arrears due to the Pressroom Unions' Pension Trust Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Pressroom Unions' Pension Trust Fund.

( X )   5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Pressroom Unions' Pension Trust Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York**  ⎫
                                      ⎬ ss:
**County of New York** ⎭

**Roger Maher**
**Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____                         _____

Date                                                                    Roger Maher

## OFFICE OF THE IMPARTIAL ARBITRATOR

| In the Matter of the Arbitration | |
|---|---|
| **Between**<br><br>**Local 51 Education, Relocation and Supplemental unemployment Benefits Fund**<br><br>**And**<br>**EVEREADY GRAPHICS** | **AWARD**<br><br>**Hearing Date:** 05/30/07<br><br>**Hearing Closed:** 05/30/07 |

### BACKGROUND

The matter(s) here at issue between the above-named parties involved the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund's claim that the above-named Employer has violated the Collective Bargaining Agreement (Fund Exhibit No. 1) between the parties by failing to comply with certain provisions of the Agreement pertaining to this employee benefit Fund established under the Agreement.

The issue(s) submitted to the Undersigned for final and binding determination were presented at a scheduled hearing pursuant to written notice duly served upon the parties here involved. The Undersigned heard the matter in the absence of the Employer and received verified information prepared by the representatives of the Fund and by sworn testimony as to the arrears involved.

### AWARD

The Undersigned, constituting the duly authorized Arbitrator to whom was voluntarily submitted the matter in controversy between the parties above-named, having provided the parties with full and ample opportunity to appear and to present evidence and arguments in support of their respective positions, and having heard the allegations and testimony and received evidence bearing on the controversy, makes the following AWARD on the issue(s) involved (only those paragraphs marked "X" are applicable):

( X )  1.    The Employer is directed to provide forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund here involved the regular monthly payroll reports required by the Agreement for the period (s): 02/07                                                    .

( X )  2.    (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due under the Agreement, in the amount of: $ 50.39        for the period (s): 02/07

(b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the Contract, viz. $ 15.00                            .*

(c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $ 13.00                            .

(   )  3.    (a) The Employer owes and is directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund contributions due as a result of the audit conducted by the Fund, in the amount of $                        for the period(s):

(b) plus 15% interest and 15% liquidated damages due as computed by the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund under the applicable provisions of the contract, viz. $                            .

(c) The Employer is also directed to pay forthwith to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund the reasonable costs and expenses in connection with this arbitration proceeding, as provided in and determined under the Agreement, in the following amount: $                    .

( X )  4.    Inasmuch as certain of the arrears due to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund were estimated by the Fund from such limited payroll data as were available, the amounts of arrears, plus interest, shall be adjusted upward or downward by the Fund after receipt of the actual payroll data the Employer is directed hereby to provide to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

( X )  5.    The Employer is hereby directed to make timely contributions and remain current with regard to the provisions pertaining to the payment of contributions to the Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund.

*To date and continuing at the rate of 1 ¼% per month until paid.

**State of New York**  ⎤
                                   ⎬ ss:
**County of New York** ⎦

**Roger Maher**
**Impartial Arbitrator**

I, ROGER MAHER, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

May 30, 2007

_____
Date

_____
Roger Maher

PROSKAUER ROSE LLP
Sally L. Schneider
1585 Broadway
New York, NY   10036
(212) 969-3803

Attorneys for Petitioners

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
PRESSROOM UNIONS' WELFARE TRUST    :
FUND, PENSION TRUST FUND and        :     08 Civ. 521 (RMB)
LOCAL 51 EDUCATION, RELOCATION    :
AND SUPPLEMENTAL UNEMPLOYMENT   :
BENEFITS FUND, by their Trustees,      :
                                           :
                        Petitioners,   :
                                           :
      - against -                    :
                                           :
EVEREADY GRAPHICS, INC.,         :
                                           :
                    Respondent.   :
------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PETITION TO CONFIRM ARBITRATION AWARDS</u>

### <u>Preliminary Statement</u>

This memorandum of law is submitted on behalf of Petitioners, the Pressroom Unions'

Welfare Trust Fund, Pension Trust Fund and Local 51 Education, Relocation and

Supplemental Unemployment Benefits Fund (the "Funds"), in support of their petition to

confirm the awards in the arbitration proceedings between the Funds and respondent Eveready

Graphics, Inc. ("Eveready").   The arbitration awards (the "Awards") were served upon

Eveready.   Eveready, however, has failed to comply with the Awards.

**Statement of Facts**

The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with section 302(c)(5) the Taft-Hartley Act (29 U.S.C. § 186(c)(5)).  The Funds are employee benefit plans within the meaning of sections 3(1), 3(3) and 502(d)(1) of ERISA (29 U.S.C. §§ 1002(1), (3) and 1132(d)(1)), and multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145).  The Funds provide various health, welfare, pension, education, relocation and supplemental unemployment benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the printing industry and the Graphic Communications Union Local 51-23M G.C.I.U.-A.F.L.-C.I.O. (the "Union").  The Trustees of the Funds are fiduciaries within the meaning of sections 3(21) and 502 of ERISA (29 U.S.C. §§ 1002(21) and 1132).    (Verified Petition, ¶¶'s 2 and 3).

Respondent Eveready, an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145) and an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185), contractually agreed with the Union to be bound by the terms of a collective bargaining agreement with the Union (the "CBA") and the Funds' trust agreements.  (Verified Petition, ¶¶'s 4 and 5).

Pursuant to the CBA and the trust agreements, Eveready agreed to pay monthly contributions to the Funds for all of Eveready's covered employees.  (Verified Petition, ¶ 6).

Eveready failed to pay its required monthly contributions to the Funds for the months of November 2006 through February 2007.  As a result, the Funds served Eveready with a demand for arbitration for each failure.  (Verified Petition, ¶¶'s 7 and 8).

Arbitration hearings were held on January 30, 2007, February 26, 2007, March 29, 2007 and May 30, 2007.  (Verified Petition, ¶ 9, Petition Exh. B).

The Funds were present at each hearing, but Eveready did not appear.  The Arbitrator heard the matters and received evidence submitted by the Funds as to the amount of Eveready's delinquencies.  (Verified Petition, ¶ 10).

After having provided the parties with full and ample opportunity to appear and to present evidence with arguments in support of their respective positions, the Arbitrator issued the written awards (the "Awards").  (Verified Petition, ¶ 11, Petition Exh. B).

Each of the Awards was sent to Eveready.  To date, however, none of the delinquent contributions contractually due to the Funds and no part of the Awards in favor of the Funds have been paid. (Verified Petition, ¶¶'s 12 and 13).

As a result of Eveready's failure to comply with its contractual and statutory obligations under ERISA, petitioners Funds have been required to employ counsel to enforce the Awards.  (Verified Petition, ¶¶'s 14 and 15).

## ARGUMENT

### I.     THE ARBITRATION AWARDS SHOULD BE CONFIRMED

Jurisdiction of this proceeding is premised upon section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. §185) (the "Taft-Hartley Act"), section 9 of the Federal Arbitration Act, as amended (9 U.S.C. § 9), and sections 502(a)(3), 502(e) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1132(e) and 1145) ("ERISA"), all of which confer jurisdiction on this Court.

This proceeding, which is brought by the Trustees of the Funds, seeks to confirm and enforce the Awards issued within the past year as a result of Eveready's failure to comply with

its contractual and statutory obligation under ERISA to pay contributions to the Funds.

Section 502(a) of ERISA (29 U.S.C. §1132(a)(3)), provides, in pertinent part, that an action

may be brought

> by a participant, beneficiary, or fiduciary, (A) to enjoin
> any act or practice which violates any provisions of this
> subchapter or the terms of the plan, or (B) to obtain other
> appropriate equitable relief (i) to redress such violations
> or (ii) to enforce any provisions of this subchapter or the
> terms of the plan.

Section 301 of the Taft-Hartley Act grants federal courts the authority to confirm

arbitration awards. *Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85,

88 (2d Cir. 1998); *Harry Hoffman Printing, Inc. v. Graphic Communication, Int'l Union, Local

261*, 912 F.2d 608, 612 (2d Cir. 1990). In addition, section 9 of the Federal Arbitration Act

(the "FAA") provides for judicial enforcement of arbitration awards.

Courts in this circuit have recognized that the "confirmation of an arbitration award is a

summary proceeding that merely makes what is already a final arbitration award a judgment of

the court." *Florasynth Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); *see also Barbier v.

Shearson Lehman Hutton, Inc.*, 752 F. Supp. 151, 159 (S.D.N.Y. 1990). Judicial review of an

arbitration award is extremely limited. *See United Paperworkers Int'l Union v. Misco, Inc.*,

484 U.S. 29 (1987); *Local 1199, Hosp. & Health Care Employees Union v. Brooks Drug Co.*,

956 F.2d 22, 23 (2d Cir. 1992). Pursuant to section 9 of the FAA, the Court must confirm the

award, unless respondent can establish a valid defense under section 10 or 11 of the FAA. *See

Barbier*, 752 F. Supp. at 159.

In the present case, none of the grounds for denying the petition to confirm the Awards

are present. Accordingly, the Funds' petition should be granted.

II.     **PETITIONERS SHOULD BE AWARDED THE FULL RELIEF
        AUTHORIZED BY ERISA**

In actions involving delinquent contributions, section 502(g)(2) of ERISA (29 U.S.C. §

1132(g)(2)), provides:

> In any action under this subchapter by a fiduciary for or on behalf of a
> plan to enforce § 1145 of this title in which a judgment in favor of the plan is
> awarded, the court shall award the plan-
>
> (A)     the unpaid contributions,
>
> (B)     interest on the unpaid contributions,
>
> (C)     an amount equal to the greater of-
>
>> (i)    interest on the unpaid contributions, or
>>
>> (ii)   liquidated damages provided for under the plan in an amount
>> not in excess of 20 percent (or such higher percentage as may be
>> permitted under Federal or State law) of the amount determined
>> by the court under subparagraph (A),
>
> (D)     reasonable attorney's fees and costs of the action, to be paid by
> the defendant, and
>
> (E)     such other legal or equitable relief as the court deems
> appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be
> determined by using the rate provided under the plan, or, if none, the rate
> prescribed under section 6621 of Title 26.

Although the specified relief and monetary amounts mandated by sections

502(g)(2)(A), (B) and (C)(ii), pertaining to the unpaid contributions, interest on the unpaid

contributions and liquidated damages, are already included in the Awards, the Funds request an

order and judgment for each of the aforementioned specified forms of relief, including

attorneys' fees and costs incurred in this proceeding, pursuant to ERISA.

III.    **PETITIONERS ARE ENTITLED TO RECOVER ATTORNEYS' FEES**

As set forth above, section 502(g)(2)(D) of ERISA requires an award of attorneys' fees

and costs incurred in the collection of unpaid contributions.  Additionally, in suits to compel

compliance with an arbitration award, reasonable attorneys' fees are properly awarded if the party opposing enforcement or failing to comply with the award acted without justification. *International Chemical Workers v. BASF Wyandotte Corp.*, 774 F.2d 43 (2d Cir. 1985); *Synergy Gas Co. v. Sasso*, 853 F.2d 59 (2d Cir. 1988); *Corporate Printing Co. v. New York Typographical Union No. 6*, 1994 WL 376093 (S.D.N.Y. 1994)(Sotomayor, J.).

In the present case, Eveready has flagrantly refused to comply with the Awards, and it cannot provide justification for its failure to comply with its statutory and contractual obligations.  As a direct result of Eveready's non-compliance, the Funds have incurred costs and legal fees to seek judicial enforcement of the Awards.  Thus, under the circumstances, it is respectfully submitted that Petitioners are entitled to an award of attorneys' fees and costs.

## CONCLUSION

For all the foregoing reasons, Petitioners respectfully request that the Court issue an Order confirming the Awards and granting the supplemental relief requested, as well as such other relief as the Court may deem just and proper.

Dated:  New York, New York
        January 14, 2008

                                              PROSKAUER ROSE LLP
                                              Attorneys for Petitioners

                                              By: /s/ Sally L. Schneider
                                                  Sally L. Schneider
                                              1585 Broadway
                                              New York, New York  10036
                                              (212) 969-3803

                                              sschneider@proskauer.com

PROSKAUER ROSE LLP
Sally L. Schneider
1585 Broadway
New York, New York 10036
(212) 969-3803

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PRESSROOM UNIONS' WELFARE TRUST       :
FUND, PENSION TRUST FUND and          :
LOCAL 51 EDUCATION, RELOCATION        :   08 Civ. 521 (RMB)
AND SUPPLEMENTAL UNEMPLOYMENT         :
BENEFITS FUND, by their Trustees,     :
                                      :
                        Petitioners,  :
                                      :   **STATEMENT OF DAMAGES**
                - against -           :
                                      :
EVEREADY GRAPHICS, INC.,              :
                                      :
                        Respondent.   :
------------------------------------------------------------------X

| | |
|---|---:|
| Principal amount of unpaid benefit contributions | $   2,217.16 |
| Interest and liquidated damages, as set forth in the Arbitration Awards | $      664.68 |
| Costs and expenses, as set forth in the Arbitration Awards | $      555.92 |
| Interest at the rate of 1¼ % per month, as set forth in the Arbitration Awards, from the date of the Awards to the date of the Petition | $      256.36 |
| Costs (29 U.S.C. § 1132(g)(2)(D)) | $      390.00 |
| Attorneys' fees (29 U.S.C. §1132(g)(2)(D)) | $   5,147.50 |
| TOTAL AMOUNT SOUGHT ON DEFAULT: | $   9,231.62 |

Dated: New York, New York
        February 28, 2008

                                        PROSKAUER ROSE LLP
                                        Attorneys for Petitioners

                                        By: /s/ Sally L. Schneider
                                            Sally L. Schneider
                                        1585 Broadway
                                        New York, New York 10036
                                        (212) 969-3803

                                        sschneider@proskauer.com

CLIENT: PRESSROOM UNIONS' FUND
MATTER: EVEREADY GRAPHICS, INC.
FILE #: 60275.022

| DATE | DESCRIPTION | ATTORNEY | HOURS | FEES |
|------|-------------|----------|-------|------|
| 12/05/07 | Begin drafting petition to confirm arbitration awards & memorandum of law in support of petition | S SCHNEIDER | 1.75 | 918.75 |
| 12/06/07 | Draft notice of petition to confirm arbitration awards; draft verification; draft rule 7.1 disclosure statement | S SCHNEIDER | .75 | 393.75 |
| 12/17/07 | 2 Telephone conferences with Funds/Nieves re collective bargaining agreement; review/analyze fax from Nieves w/attached copy of 04-07 collective bargaining agreement | S SCHNEIDER | .25 | 131.25 |
| 01/04/08 | Revise petition to confirm arbitration awards; revise notice of petition | S SCHNEIDER | .50 | 262.50 |
| 01/07/08 | Revise/edit memorandum of law in support of petition to confirm arbitration awards; e-mail to Sclafani w/attached petition for review & verification for execution | S SCHNEIDER | .25 | 131.25 |
| 01/17/08 | Finalize verified petition to confirm arbitration awards w/attached exhibits, memorandum of law in support, notice of motion, etc.; prepare memo to Cooper re filing originals w/Court | S SCHNEIDER | 1.25 | 656.25 |
| 01/18/08 | Notice of Petition, Verified Petition, Memorandum of Law, Rule 7.1 Statement and Civil Cover Sheet filed with the Southern District of New York | J FLEMING JR. | .50 | 80.00 |

REDACTED

```
CLIENT: PRESSROOM UNIONS' FUND
MATTER: EVEREADY GRAPHICS, INC.
FILE #: 60275.022
PAGE:     2
```

| DATE | DESCRIPTION | ATTORNEY | HOURS | FEES |
|------|-------------|----------|-------|------|
| 01/22/08 | Prepare correspondence to judge/Berman w/courtesy copies of notice of petition, verified petition, memorandum of law, & petitioners' Rule 7.1 disclosure per judge's rules | S SCHNEIDER | .25 | 131.25 |
| 01/22/08 | Prepare correspondence to process server/LaPointe re service w/copies of notice of petition, verified petition, memorandum of law, judge's individual practices, & ECF instructions, guidelines & procedures | S SCHNEIDER | .25 | 131.25 |
| 01/22/08 | Convert notice of petition, verified petition, memorandum of law, & petitioners' Rule 7.1 disclosure to pdf files & e-mail same to Court clerk per ECF rules | S SCHNEIDER | .50 | 262.50 |
| 01/25/08 | Prepare correspondence to Eveready re scheduled pre-trial conference w/copy of fax from judge/Berman & attached notice of initial pre-trial conference & case management form | S SCHNEIDER | .25 | 131.25 |
| 01/28/08 | Convert affidavit of service to PDF file & electronically file w/Court per ECF rules | S SCHNEIDER | .25 | 131.25 |
| 01/28/08 | Fld AOS with respect to Notice of Petition manually with SDNY; re: Pressroom v. Eveready Graphic 08-521 (RMB) | K BIGLIANI | .50 | 80.00 |

REDACTED

CLIENT: PRESSROOM UNIONS' FUND
MATTER: EVEREADY GRAPHICS, INC.
FILE #: 60275.022
PAGE:     3

| DATE | DESCRIPTION | ATTORNEY | HOURS | FEES |
|------|------------|----------|-------|------|
| 02/21/08 | Draft attorney affidavit in support of motion for judgment | S SCHNEIDER | .75 | 393.75 |
| 02/21/08 | Draft statement of damages for judgment; draft Clerk's certificate of default | S SCHNEIDER | .50 | 262.50 |
| 02/25/08 | Attend pretrial conference | S SCHNEIDER | 1.50 | 787.50 |
| 02/25/08 | Draft proposed judgment; draft notice of motion for judgment | S SCHNEIDER | .50 | 262.50 |

REDACTED

```
CLIENT: PRESSROOM UNIONS' FUND
MATTER: EVEREADY GRAPHICS, INC.
FILE #: 60275.022
PAGE:      4
```

TIME AND FEE SUMMARY

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| SALLY L. SCHNEIDER | 9.50 | 525.00 | $ 4,987.50 |
| Total for Attorney | 9.50 | | $ 4,987.50 |

| Managing Clerks | | | |
|---|---|---|---|
| KENNETH BIGLIANI | .50 | 160.00 | 80.00 |
| JOHN G. FLEMING JR. | .50 | 160.00 | 80.00 |
| Total for Managing Clerks | 1.00 | | $   160.00 |
| MATTER TOTAL: | 10.50 | | $ 5,147.50 |

REDACTED

PROSKAUER ROSE LLP
Sally L. Schneider
1585 Broadway
New York, New York 10036
(212) 969-3803

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PRESSROOM UNIONS' WELFARE TRUST    :
FUND, PENSION TRUST FUND and      :
LOCAL 51 EDUCATION, RELOCATION  :   08 Civ. 521 (RMB)
AND SUPPLEMENTAL UNEMPLOYMENT :
BENEFITS FUND, by their Trustees,     :
                                           :
                Petitioners,    :   **JUDGMENT**
                                           :
      - against -               :
                                         :
EVEREADY GRAPHICS, INC.,        :
                                         :
                Respondent.   :
-------------------------------------------------------------------X

       This action having been commenced by the filing of a Verified Petition to Confirm

Arbitration Awards (the "Petition") on January 18, 2008, and true copies of the Petition having

been served upon respondent Eveready Graphics, Inc. on January 24, 2008 by Deborah LaPointe,

a licensed process server, by service upon Donna Christie, an agent of the Secretary of State of

the State of New York, pursuant to section 306 of the Business Corporation Law of the State of

New York, and proof of service having been filed with the Court on January 28, 2008, and said

respondent having failed to answer, appear or otherwise defend in this action within the time

permitted by law, and

The Court having considered the merits of the Petition, including the agreement to arbitrate and the arbitration awards, as well as the statement of damages and all documents submitted in support thereof, there is no just reason to delay the entry of a judgment against respondent Eveready Graphics, Inc.

NOW, on motion of Proskauer Rose LLP, attorneys for Petitioners, by Sally L. Schneider, Esq., it is

**ORDERED AND ADJUDGED**, that petitioners Pressroom Unions' Welfare Trust Fund, Pension Trust Fund and Local 51 Education, Relocation and Supplemental Unemployment Benefits Fund have judgment against respondent Eveready Graphics, Inc. in the liquidated amount of $9,231.62, which amount includes unpaid benefit contributions, interest, liquidated damages, costs and expenses, and attorneys' fees and costs.

Dated:   New York, New York
         March _____, 2008


                                          _____
                                          Hon. Richard M. Berman,
                                          United States District Judge